UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

LIBERTY MUTUAL INSURANCE COMPANY,

                    Plaintiff,                    13 Civ. 3755 (JGK)

          - against -                             OPINION AND ORDER

THE FAIRBANKS COMPANY,

                    Defendant.
────────────────────────────────────

JOHN G. KOELTL, District Judge:

     This action arises out of an insurance coverage dispute
between Plaintiff Liberty Mutual Insurance Company ("Liberty
Mutual") and Defendant The Fairbanks Company.  The Fairbanks
Company is a manufacturing company that has been named in
several lawsuits alleging injuries from exposure to asbestos.
Liberty Mutual is one of seven insurance companies that have
issued liability insurance policies to The Fairbanks Company at
various times beginning in 1974.  Since 2006, these insurers
have covered the defense and indemnity costs from third-party
asbestos claims filed against The Fairbanks Company.  In May
2013, Lumberman's Mutual Insurance Company ("Lumberman's"),
which issued primary liability insurance policies to The
Fairbanks Company between 1987 and 1993, was placed into
liquidation in Illinois.  In this action, Liberty Mutual seeks a
declaratory judgment that it is not required to cover any
portion of the share of defense and indemnity costs previously

1

covered by Lumberman's (the "orphan share").  Liberty Mutual also seeks reimbursement from The Fairbanks Company for any payments made to The Fairbanks Company that are in excess of Liberty Mutual's allocable share, according to Liberty Mutual's time on the risk.

Presently before the Court is a motion brought by The Fairbanks Company for transfer of this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of Georgia, where a related action involving all of the remaining solvent insurers who have provided defense and indemnity costs to The Fairbanks Company (the "Georgia Action") is pending.  Also before the Court is a motion by The Fairbanks Company to stay or dismiss this action pursuant to various abstention doctrines pending resolution of the Georgia Action.  For the reasons that follow, the motion by The Fairbanks Company to transfer this action is denied, and the motion to stay or dismiss this action is denied as moot.

I.

The following facts, as alleged in the Complaint filed in this action, the complaint filed in the Georgia Action, and the affidavits and declarations submitted by the parties, are undisputed unless otherwise noted.

2

A.

The Fairbanks Company is a corporation organized under Georgia law, with its principal place of business in Rome, Georgia.  (Aff. of David F. Russey ("Russey Aff."), Ex. B ("Ga. Compl.") ¶ 1; Compl. ¶ 4; Decl. of Franklin H. Butcher ("Butcher Decl.") ¶¶ 2, 5, 9-10.)  Prior to 1982, a predecessor company also known as The Fairbanks Company, which manufactured valves and material handling equipment, was incorporated under the laws of New Jersey, with its principal place of business in New York. (Butcher Decl. ¶ 4; Compl. ¶ 4.)  In 1982, this predecessor company was purchased by the Fairbanks Acquisition Corporation, which was incorporated under the laws of California.  (Butcher Decl. ¶ 4.)  As part of the acquisition, the Fairbanks Acquisition Corporation assumed the liability for all products that had been manufactured by The Fairbanks Company.  (Butcher Decl. ¶ 4.)  The Fairbanks Acquisition Corporation then changed its name to The Fairbanks Company (hereinafter "Fairbanks"). (Butcher Decl. ¶ 4.)

Fairbanks discontinued its New York-based valve manufacturing business in 1984, and sold that business the following year.  (Butcher Decl. ¶ 6.)  In 1999, Fairbanks surrendered its business registration for the State of New York, and in 2002, Fairbanks withdrew from California and incorporated under the laws of Georgia.  (Butcher Decl. ¶¶ 5, 7.)  Fairbanks

3

no longer has any assets, operations, or employees in New York.
(Butcher Decl. ¶ 8.)  Fairbanks currently performs all of its
operations at its only location—a nine-acre site in Rome,
Georgia, where it employs thirty-two full-time employees and one
part-time employee.  (See Butcher Decl. ¶¶ 8-11.)  Fairbanks's
net income in 2012 was $271,232 and its sales were slightly less
than $6 million.  (Butcher Decl. ¶ 13.)


B.

    Liberty Mutual is an insurance carrier that is organized
under the laws of Massachusetts and has its principal place of
business in Boston, Massachusetts.  (Compl. ¶ 3; Ga. Compl.
¶ 3.)  In 2012, Liberty Mutual had $36.9 billion in annual
revenue.  (Russey Aff., Ex. E at 1.)  Liberty Mutual has a
corporate office in New York, and has been authorized to do
business in New York at all times relevant to this action.
(Compl. ¶ 3; Russey Aff., Ex. E at 1.)  Liberty Mutual also has
several branch offices in Georgia.  (See Russey Aff., Ex. F at
1.)


C.

    Liberty Mutual issued comprehensive general liability
policies and umbrella excess liability policies to The Fairbanks
Company for successive annual periods from January 1974 through

4

January 1982.  (Compl. ¶ 7; see also Ga. Compl., Ex. A, Ex. B.)
These policies were issued to The Fairbanks Company at its New
York offices in Binghamton, New York.  (Compl. ¶ 7.)  From April
1982 to July 1998, six other insurance carriers issued primary
and excess liability policies to Fairbanks, including: National
Union Fire Insurance Company of Pittsburgh ("National Union");
Fireman's Fund Insurance Company ("Fireman's"); AXA Royale Belge
("AXA"); The Hartford Insurance Company ("Hartford"); Traveler's
Casualty & Surety Company ("Traveler's"); and Lumberman's.  (See
Ga. Compl. ¶¶ 16-18, Ex. A, Ex. B.)

    Fairbanks has been sued in a number of actions in various
jurisdictions alleging personal injuries from asbestos exposure.
(Compl. ¶¶ 10-11; Ga. Compl. ¶¶ 14-15.)  Pursuant to the
liability insurance policies issued to Fairbanks between 1974
and 1998, the liability insurance carriers for Fairbanks have
contributed to the defense and indemnity costs for Fairbanks
arising from these actions.[1]  (Ga. Compl. ¶ 23.)

    In May 2013, Lumberman's was placed into liquidation in
Illinois.  (Ga. Compl. ¶ 19; Decl. of David F. Russey in Supp.

---

[1] Fairbanks alleges that its insurance carriers have covered one
hundred percent of its asbestos-related defense and indemnity
costs, (see Ga. Compl. ¶¶ 23-24), whereas Liberty Mutual alleges
that Fairbanks has covered some of these costs in the past.
(See Compl. ¶ 13.)  This dispute is immaterial for present
purposes.

of Mot. to Dismiss or Stay ("Russey Decl."), ¶ 2.)  This created
an "orphan share" for Lumberman's portion of Fairbanks's
asbestos defense and indemnity costs under the policies issued
to Fairbanks by Lumberman's for the periods between June 1987 to
June 1990, and June 1992 to June 1993.  (See Ga. Compl. Ex. B.)
Subsequently, Liberty Mutual and National Union took the
position that Liberty Mutual and National Union had no
obligation to cover any portion of the "orphan share" created by
the liquidation of Lumberman's.  (Ga. Compl. ¶ 36.)  In
response, Fairbanks initiated discussions with Liberty Mutual
and National Union in an attempt to settle the dispute over
their refusal to cover the "orphan share."  (Russey Decl. ¶ 5.)
These discussions ceased when this litigation began.  (Russey
Decl. ¶ 7.)


                              D.

     Liberty Mutual filed this lawsuit on June 3, 2013.  In this
action, Liberty Mutual seeks a declaration that it is not
responsible for covering anything more than its "allocable
share" for Fairbanks's defense and indemnity costs relating to
the asbestos actions.  (Compl. ¶¶ 18-19.)  Liberty Mutual also
seeks equitable contribution and indemnity from Fairbanks for
any costs that it has already paid in excess of its allocable
share.  (Compl. ¶¶ 22-23.)

                              6

On June 24, 2013, Fairbanks filed a lawsuit in the Superior Court of DeKalb County, Georgia, against Liberty Mutual, National Union, Fireman's, AXA, Hartford, Traveler's, and the Georgia Insurers Insolvency Pool (the "Georgia Pool"), a non-profit entity created by Georgia statute to provide limited coverage for the claims of certain Georgia insureds whose carriers have become insolvent.  (Ga. Compl. ¶ 8.)  Fairbanks brought a claim for breach of contract against Liberty Mutual and National Union based on these carriers' stated position that they are not responsible for covering any portion of the "orphan share" created by the Lumberman's liquidation, (Ga. Compl. ¶¶ 35-41); a claim against all defendants for a declaratory judgment that the insurance carriers are responsible for one hundred percent of Fairbanks's asbestos defense and indemnity costs after the Lumberman's liquidation, (Ga. Compl. ¶¶ 42-49); and a claim against National Union for breach of contract based on a change in settlement strategy effected by National Union beginning sometime in 2011.  (Ga. Compl. ¶¶ 25-34.)

On July 18, 2013, Liberty Mutual removed the Georgia Action to the Northern District of Georgia, where it was assigned to United States District Judge Steve C. Jones.

E.

On July 25, 2013, Liberty Mutual moved to dismiss the Georgia Action under Rule 12(b)(3) of the Federal Rules of Civil Procedure, arguing that venue was improper in the Northern District of Georgia under the "first-filed rule" because Liberty Mutual had filed this earlier, overlapping action in the Southern District of New York.  On August 19, 2013, the Georgia Pool moved to remand the Georgia Action to state court, and on August 29, 2013 Fairbanks also moved to remand.  On November 19, 2013—while the motions to remand the Georgia Action were pending—Fairbanks filed the present motion to stay or dismiss this action, or to transfer this action to the Northern District of Georgia.

On November 22, 2013, Judge Jones denied the remand motions in the Georgia Action and dismissed the claim against the Georgia Pool.  On March 4, 2014, Judge Jones denied Liberty Mutual's motion to dismiss the Georgia Action.  Judge Jones also concluded that under the first-filed rule the Georgia Action should be stayed while this Court, as the Court where the first case was filed, decided the question of whether this action should be transferred to the Northern District of Georgia. Accordingly, the Georgia Action is stayed pending resolution of the present motions in this action.

II.

Fairbanks has moved pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Northern District of Georgia. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." There is no dispute that this action "might have been brought" in the Northern District of Georgia because venue is proper there.[2]   Accordingly, the Court must determine whether a transfer to the Northern District of Georgia should be ordered "for the convenience of the parties and witnesses, and in the interest of justice."   28 U.S.C. § 1404(a).

In ruling on a motion to transfer under § 1404(a), courts should consider both the interest of the litigants and the public interest.  See Gulf Oil Corp. v. Gilbert, 330 U.S. 501,

---

[2] For the purposes of § 1404(a), an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction over the action and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court.  Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004).  It is undisputed that Fairbanks, which is headquartered in the Northern District of Georgia, would be subject to personal jurisdiction in the Northern District of Georgia and that venue would be proper there.  See 28 U.S.C. § 1391(b)(1).  Subject matter jurisdiction would be proper pursuant to 28 U.S.C. § 1332.

508 (1947); Ainbinder v. Potter, 282 F. Supp. 2d 180, 191 (S.D.N.Y. 2003).  In determining whether to transfer venue, the Court has "broad discretion" to consider "notions of convenience and fairness on a case-by-case basis," and the burden of establishing the propriety of a change of forum rests on the moving party.  In re Cuyahoga Equip. Corp. v. Publicker Indus., Inc., 980 F.2d 110, 117 (2d Cir. 1992); see also Ainbinder, 282 F. Supp. 2d at 191.  In allowing courts to transfer venue in the interest of justice, the statute uses "a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer."  Schneider v. H.A. Sears, 265 F. Supp. 257, 263 (S.D.N.Y. 1967) (Weinfeld, J.); see also Harve Benard Ltd. v. Nathan Rothschild, K.I.D. Int'l, Inc., No. 02 Civ. 4033, 2003 WL 367859, at *6 (S.D.N.Y. Feb. 19, 2003).

The parties disagree as to whether Fairbanks has met its burden of establishing that the interest of the litigants and the public interest favor transfer.  In addition, Liberty Mutual argues that transfer should be denied under the "first-filed" rule.

A.

It is a well-settled rule in this Circuit that "where there are two competing lawsuits, the first suit should have priority,

absent the showing of balance of convenience or special
circumstances giving priority to the second." First City Nat'l
Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989)
(collecting cases). "This rule embodies considerations of
judicial administration and conservation of resources by
avoiding duplicative litigation and honoring the plaintiff's
choice of forum." Empl'rs Ins. of Wausau v. Fox Entm't Grp.,
Inc., 522 F.3d 271, 275 (2d Cir. 2008) (citation and internal
quotation marks omitted); see also United States ex rel. Cestra
v. Cephalon, Inc., No. 10 Civ. 6457, 2014 WL 1087960, at *4
(S.D.N.Y. Mar. 19, 2014).

    Fairbanks argues that there is insufficient resemblance
between this action and the Georgia Action to warrant
application of the first-filed rule in this case, and that even
if the first-filed rule is applicable, special circumstances
justify departing from the rule.


                                1.

    "Whether two actions represent competing lawsuits [for
purposes of the first-filed rule] is a matter of the district
court's discretion." Cephalon, 2014 WL 1087960, at *4
(citations omitted). The first-filed rule is not to be applied
in a "rigid" or "mechanical" way. Dornoch Ltd. ex rel.
Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings,

                                11

Inc., 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009) (citation
omitted).  "Rather, because the complex problems that can arise
from multiple federal filings do not lend themselves to a rigid
test, the district court is instead required to consider the
equities of the situation when exercising its discretion."
Quinn v. Walgreen, Co., 958 F. Supp. 2d 533, 539 (S.D.N.Y. 2013)
(citation and internal quotation marks omitted).  The classic
application of the first-filed rule is "where mirror-image
lawsuits between the same parties are filed in different
venues."  Cephalon, 2014 WL 1087960, at *4.  However, the
existence of non-overlapping claims or parties does not
disqualify lawsuits from the first-filed rule.  See id. at *4-5;
Wyler-Wittenberg v. Metlife Home Loans, Inc., 899 F. Supp. 2d
235, 244-45 (E.D.N.Y. 2012).  Rather, the core question is
whether "there are common violations of law alleged."  Cephalon,
2014 WL 1087960, at *4-5 (citation omitted).

     In this action, Liberty Mutual seeks a determination that
it is "not obligated to contribute more than its allocable share
for the indemnification of Fairbanks in the Asbestos Actions."
(Compl. ¶ 18.)  In the Georgia Action, Fairbanks seeks a
declaration that Liberty Mutual and the other insurer defendants
have a duty to "pay 100% of Fairbanks' defense, settlement and
judgment costs" stemming from third-party asbestos actions.
(Ga. Compl. ¶ 49.)  Fairbanks also brings a breach-of-contract

claim against Liberty Mutual and National Union for their assertion of the right to limit their coverage for defense and indemnity from asbestos claims to a "pro rata time-on-the-risk share." (Ga. Compl. ¶ 36.) Although they are styled somewhat differently, each of these claims seeks a determination of Liberty Mutual's allocable share of Fairbanks's asbestos liability after the liquidation of Lumberman's. The facts and issues in the disputes between these parties are therefore the same in both actions. Accordingly, the first-filed rule applies in this case.

Fairbanks nevertheless contends that the first-filed rule is inapplicable because the Georgia Action is undisputedly broader. Fairbanks points to the claim in the Georgia Action against National Union for breach-of-contract stemming from National Union's settlement and litigation strategy, which is distinct from any claims in this action. (See Ga. Compl. ¶¶ 25-34.) However, this additional claim cannot defeat a finding of substantial similarity when the core claims in the Georgia Action are mirror images of the core claim in this action. See, e.g., Cephalon, 2014 WL 1087960, at *4; AXA Belgium, S.A. v. Century Indem. Co., No. 09 Civ. 9703, 2010 WL 199709, at *2 (S.D.N.Y. Jan. 11, 2010). The existence of a non-overlapping claim does not require setting the first-filed rule aside.

Fairbanks also emphasizes the presence of additional parties in the Georgia Action.  But the existence of non-overlapping parties does not defeat application of the first-filed rule as long as some of the parties do overlap.  See, e.g., Wyler-Wittenberg, 899 F. Supp. 2d at 244-45; see also Oleg Cassini, Inc. v. Serta, Inc., No. 11 Civ. 8751, 2012 WL 844284, at *4 (S.D.N.Y. Mar. 13, 2012).  The first-filed rule therefore requires prioritizing this action "absent the showing of balance of convenience or special circumstances giving priority to the second."  Simmons, 878 F.2d at 79.

2.

Fairbanks argues that special circumstances justify departing from the first-filed rule.  "Special circumstances are present when the first suit was filed as a result of forum shopping or when the first suit was a result of 'anticipatory filing.'"  Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 511 (S.D.N.Y. 2004) (collecting cases).

In its papers, Fairbanks argues that this action is an illegitimate declaratory judgment action because it was brought in anticipation of the suit by Fairbanks in Georgia.  "[I]n order for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal

14

action." <u>Emp'rs Ins. of Wausau</u>, 522 F.3d at 276 (citations
omitted).  Pre-suit correspondence that merely seeks information
or serves to further settlement negotiations is not enough, even
if litigation is on the horizon; there must be a "notice letter
or other communication conveying a specific threat of
litigation." <u>Id.</u> at 277.

In a sworn declaration, counsel for Fairbanks asserts that
"Fairbanks . . . initiated discussions with Liberty Mutual . . .
over [its] refusal to pay defense costs.  Fairbanks conveyed its
clear and firm position that its insurers were required to pay
all of the costs, and that Fairbanks lacked the financial
wherewithal to contribute to these costs."  (Russey Decl. ¶ 5.)
Counsel for Fairbanks further asserts that "[b]efore Liberty
Mutual filed its complaint in this matter, the insurers and
Fairbanks were discussing the scheduling of a meeting to attempt
to resolve the dispute."  (Russey Decl. ¶ 6.)  These
developments indicate pre-suit correspondence that served the
purpose of information gathering and settlement negotiation.
There are no allegations of any communication of a specific
intent to sue that would rise to the level required to render
this action improperly anticipatory.  <u>See</u> <u>Cephalon Inc. v.
Travelers Cos.</u>, 935 F. Supp. 2d 609, 614 (S.D.N.Y. 2013);
<u>Michael Miller Fabrics, LLC v. Studio Imports Ltd.</u>, No. 12 Civ.

3858, 2012 WL 2065294, at *3 (S.D.N.Y. June 7, 2012) (collecting cases).

At argument, Fairbanks conceded that the test for whether a lawsuit is improperly anticipatory has not been met.  (See Oral Arg. Tr. at 29-30.)  Fairbanks nevertheless asserts that the pre-suit communications between the parties and the timing of the two suits demonstrate, under the totality of the circumstances, a race to the courthouse that has deprived Fairbanks of its choice of forums.  Forum shopping can indeed constitute a special circumstance sufficient to justify setting the first-filed rule aside.  Michael Miller Fabrics, 2012 WL 2065294, at *4.  However, the Second Circuit Court of Appeals has emphasized that for forum shopping to constitute a special circumstance, "the first-filing plaintiff must engage in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first."  Empl'rs Ins. of Wausau, 522 F.3d at 276.  In other words, the evidence must show that "forum shopping *alone* motivated the choice of the situs for the first suit."  Id. (citation omitted).

There are no allegations of deceptive or manipulative behavior on the part of Liberty Mutual, and the connections

16

between this litigation and the forum chosen by Liberty Mutual
are not merely de minimis.  Liberty Mutual alleges that
Fairbanks is "the legal successor to a corporation which was
also known as The Fairbanks Company, which entered into the
[Liberty Mutual] insurance policies in the State of New York and
which, at all times during the policy periods of such policies,
was authorized to do business and maintained its principal place
of business in the State of New York." (Compl. ¶ 4.)  It is
also undisputed that much of the risk to be insured under the
Liberty Mutual policies was located in New York. (See Oral Arg.
Tr. at 5-6, 31).  Thus, there is sufficient evidence of a
material connection between this forum and the facts that gave
rise to this litigation.[3]

---

[3] For the first time at oral argument, Fairbanks asserted that
any connections between this litigation and the State of New
York are centered in Binghamton, New York—the location of
Fairbanks's principal place of business when the policies were
issued—which is not in this District, and that there is
therefore no material connection between this litigation and the
Southern District of New York. (See Oral Arg. Tr. at 21-22.)
Fairbanks has not cited any support for this position, and,
indeed, it is contradicted by cases finding material connections
between a litigation and a given state. See, e.g., Accantia
Grp. Holdings v. Food Market Merchandising, Inc., 908 F. Supp.
2d 439, 441 (S.D.N.Y. 2012) ("[T]he Court is persuaded that New
York is the locus of operative facts because the allegedly
infringing products are marketed and sold in New York."
(citations omitted)).  There is no indication that Liberty
Mutual was engaged in forum shopping when it brought this
lawsuit in the Southern District of New York rather than in the

Given that this lawsuit is neither an anticipatory declaratory judgment action nor the product of impermissible forum shopping, the first-filed rule should not be set aside, and Liberty Mutual's choice to file this action in this forum is entitled to considerable deference.

B.

Departure from the first-filed rule may nonetheless be warranted if the balance of convenience favors transferring this action to Georgia. See MK Sys., Inc. v. Schmidt, No. 04 Civ. 8106, 2005 WL 590665, at *4 (S.D.N.Y. Mar. 10, 2005). "[T]he factors relevant to the balance of convenience analysis [under the first-filed rule] are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." Empl'rs Ins. of Wausau, 522 F.3d at 275 (citation and internal quotation marks omitted). "Because the factors to be considered by the Court are substantially identical, a single analysis of the factors will resolve both issues." AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1 of

---

Northern District of New York, where Binghamton is located.  The state law to be applied would be the same in the Southern and Northern Districts of New York, and the convenience to Liberty Mutual, particularly when compared with proceeding in Georgia, would be substantially the same.

18

Snohomish Cnty., Wash., 675 F. Supp. 2d 354, 368 (S.D.N.Y. 2009)

(citation omitted); see also MK Sys., 2005 WL 590665, at *3.

The factors relevant to the balance-of-convenience inquiry

include:

> (a) the plaintiff's choice of forum, (b) the convenience of
> witnesses, (c) the location of relevant documents and
> relative ease of access to sources of proof, (d) the
> convenience of the parties, (e) the locus of operative
> facts, (f) the availability of process to compel the
> attendance of unwilling witnesses, (g) the relative means
> of the parties, (h) the forum's familiarity with the
> governing law, and (i) trial efficiency and the interest of
> justice, based on the totality of the circumstances.[4]

---

[4] In a recent articulation of the factors relevant to the
balance-of-convenience exception to the first-filed rule, the
Second Circuit Court of Appeals emphasized that the inquiries
under § 1404(a) and the first-filed rule are essentially the
same, while nevertheless omitting the traditional § 1404(a)
"public interest" factors—namely, the "forum's familiarity with
the governing law" and "trial efficiency and the interest of
justice"—from its list of factors relevant to the balance-of-
convenience exception to the first-filed rule.  See Empl'rs Ins.
of Wausau, 522 F.3d at 275.  For present purposes, a single
analysis of both sets of factors, public and private, is
appropriate because the outcome of the balance-of-convenience
inquiry is the same, regardless of whether the public interest
factors are included.

The presence of a forum-selection clause in a given case
can also be a "significant factor" in the § 1404(a) balancing
inquiry.  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29
(1988).  Although none of the policies at issue in this
litigation are in the record on this motion, it is undisputed
that none of the policies contain forum-selection clauses.

AIG, 675 F. Supp. 2d at 368 (citations omitted).  The moving party bears the burden of demonstrating that the balance of convenience favors transfer, and "[t]he plaintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of transfer."  Izkhakov v. Educ. Comm'n for Foreign Med. Graduates, No. 12 Civ. 348, 2012 WL 2861338, at *3 (S.D.N.Y. July 10, 2012) (citation omitted); see also Empl'rs Ins. of Wausau, 522 F.3d at 275 ("An even or inconclusively tilted 'balance of convenience' would ordinarily support application of the first-filed rule." (citation omitted)).


                              1.

        The convenience of the witnesses and the locus of the operative facts of the case are typically regarded as primary factors in the balance-of-convenience inquiry.[5]  See, e.g., Am. Steamship Owners Mut. Protection & Indem. Ass'n, Inc. v. Lafarge N. Am., 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007); 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134

_____

[5] The "location of relevant documents" is also listed as a separate convenience-related factor, but in recent years this has become "largely a neutral factor" given the availability of "faxing, scanning, and emailing."  AIG, 675 F. Supp. 2d at 370. Fairbanks has not indicated any reason why this factor should weigh in its favor, and it therefore receives no weight in the present analysis.  See id.

(S.D.N.Y. 1994).  Fairbanks argues that to the extent there is a locus of operative facts in this action, and a concern for the location of witnesses and documents, these factors favor transferring the action to Georgia, where Fairbanks has its principal place of business and where potential witnesses who work for Fairbanks reside.

### i.

When assessing the locus of operative facts in insurance coverage disputes, courts typically emphasize the site of negotiations, purchase, and delivery of the policy in question. See Am. Steamship, 474 F. Supp. 2d at 485; Royal Ins. Co. of Am. v. Tower Records, Inc., No. 02 Civ. 2612, 2002 WL 31385815, at *4 (S.D.N.Y. Oct. 22, 2002).  The Complaint in this action alleges that the Liberty Mutual policies were issued to Fairbanks at an address in Binghamton, New York, (Compl. ¶ 7), and there is nothing in the record to suggest that any relevant events occurred in Georgia.  The locus of operative facts is therefore in New York, not Georgia, and, accordingly, this factor weighs against transfer.

### ii.

"When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each

witness, not merely the number of witnesses in each district."
Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d
395, 404 (S.D.N.Y. 2005) (citation omitted).  Thus, a party
seeking transfer on account of the convenience of the witnesses
must "clearly specify the key witnesses to be called and must
make a general statement of what their testimony will cover."
Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir.
1978) (citations omitted), overruled on other grounds by Pirone
v. MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990).  Fairbanks
attests generally that the majority of its employees reside in
Georgia, and that these individuals are prepared to testify in
connection with this action.  However, Fairbanks has not
identified a single potential witnesses or indicated what any
witness's testimony would cover.  Accordingly, the convenience
of the witnesses is a neutral factor.


2.

     Fairbanks argues that even if the convenience of the
witnesses and the locus of operative facts do not favor
transferring this action to Georgia, these otherwise paramount
factors assume less importance in this action relative to other
factors because the issues presented are predominantly legal in
nature and likely to involve little or no factfinding.  Thus,
Fairbanks contends that complicated and unsettled issues of

Georgia law in this action favor transfer to the forum in
Georgia, which is more familiar with the governing law.
Fairbanks also argues that trial efficiency and the interest of
justice favor transfer to the Northern District of Georgia,
where there is a broader, related action pending.

i.

Trial efficiency and the interest of justice are important
factors in a § 1404(a) transfer analysis, and may be
determinative in a particular case.  Tucker Anthony, Inc. v.
Bankers Trust Co., No. 93 Civ. 0257, 1994 WL 9683, at *8
(S.D.N.Y. Jan. 10, 1994).  "One factor traditionally considered
in deciding whether a transfer is warranted in the 'interest of
justice' is whether related litigation can be consolidated by
transference to a single forum."  Id. (citations omitted).  This
is because "[t]here is a strong policy favoring the litigation
of related claims in the same tribunal in order that pretrial
discovery can be conducted more efficiently, duplicitous
litigation can be avoided, thereby saving time and expense for
both parties and witnesses, and inconsistent results can be
avoided."  Wyndham Assocs. v. Bintliff, 398 F.2d 614, 619 (2d
Cir. 1968); see also Tucker Anthony, 1994 WL 9683, at *8.

Fairbanks argues that trial efficiency and the interest of
justice should receive considerable weight in this case because

there is a more comprehensive action pending in Georgia, and
transferring this action to Georgia would facilitate an
efficient resolution of the various insurers' liability for
Fairbanks's defense and indemnity costs.  However, Fairbanks
conceded that if this Court did not transfer this action to
Georgia, Fairbanks would dismiss its action against Liberty
Mutual in Georgia.  (See Aff. of Lloyd A. Gura ("Gura Aff."),
Ex. 6 at 9; Oral Arg. Tr. at 2-3.)  Moreover, Fairbanks could
choose to implead the other insurance carriers into this action
if it really sought to have the litigation consolidated in one
place.  Indeed, at oral argument, Fairbanks acknowledged that if
this case were not transferred, the other insurers could very
well end up before this Court.  (See Oral Arg. Tr. at 13-15.)
Given that neither this action nor the Georgia Action has
reached an advanced stage, proceeding with the other insurers in
the Southern District of New York would not be materially less
efficient than proceeding with the other insurers in the Georgia
Action.  Ultimately, neither party could represent with any
certainty how many parties would end up before this Court or
would remain before the court in Georgia if this action were not
transferred.  This uncertainty renders speculative any degree to
which trial efficiency and the interest of justice would be
served by transfer.

Fairbanks's repeated assertion of the limited likelihood of fact-intensive inquiries in this case further undermines its position that trial efficiency and the interest of justice favor transfer.  Without the need for factfinding, the efficiency gains from transfer and consolidation in a single forum are reduced.  See, e.g., Berkley Regional Ins. Co. v. Weir Bros., Inc., No. 13 Civ. 3227, 2013 WL 6020785, at *5 (S.D.N.Y. Nov. 6, 2013); Madkour v. Ashcroft, No. 02 Civ. 343, 2002 WL 32507834, at *2 (D. Conn. July 11, 2002).

Given the speculative nature of the efficiency gains posited by Fairbanks—which, if realized, are likely to be minimal due to the lack of fact-intensive litigation required—trial efficiency and the interest of justice do not favor transfer.

ii.

The forum's familiarity with the governing law is typically "to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states."  Astor Holdings, Inc. v. Roski, No. 01 Civ. 1905, 2002 WL 72936, at *13 (S.D.N.Y. July 17, 2002) (citation omitted).  This factor assumes added significance when the governing law presents "complex legal questions," or is "shown to be unclear, unsettled or difficult."

25

Royal Ins. Co., 2002 WL 31385815, at *8.  On the other hand, the absence of any conflict between the law of the transferor and transferee forums reduces the significance of this factor.  See Astor Holdings, 2002 WL 72936, at *13.

The parties agree that the core substantive question presented in this case is whether Liberty Mutual's responsibility for Fairbanks's defense and indemnity costs stemming from third-party asbestos claims should be limited on a "pro rata" basis to Liberty Mutual's time on the risk, or whether, instead, Liberty Mutual should be jointly and severally liable for the entirety of Fairbanks's defense and indemnity costs, including the "orphan share" attributed to Lumberman's. However, the parties disagree about which state's laws will factor most prominently in resolving this dispute.  They also disagree about the relative importance of the forum's familiarity with the governing law in resolving the transfer motion.  Fairbanks argues that determining Liberty Mutual's responsibility for Fairbanks's defense and indemnity costs will implicate complex and unsettled questions of Georgia law, and that the familiarity-with-governing-law factor therefore favors transfer, especially given that the dispute is predominantly legal rather than factual in nature.  Liberty Mutual disputes the importance of Georgia law in determining its "allocable share" of Fairbanks's asbestos liability, and asserts instead

26

that under New York choice-of-law principles, New York law governs the dispute.

Regardless of whether this case is transferred, any choice-of-law analysis will be conducted under New York choice-of-law rules.  See Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) ("[I]n [diversity] cases . . . , the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue.").  Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  In re Allstate Ins. Co., 613 N.E.2d 936, 937 (N.Y. 1993).  This, in turn, will require examining the substantive rules of New York and Georgia to determine whether the difference between them would have a significant possible effect on the outcome of the case.  See, e.g., AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc., 726 F. Supp. 2d 307, 313 (S.D.N.Y. 2010).

Neither party has provided any specific briefing on the choice-of-law issue presented in this case, and it would be premature to determine at this stage which state's substantive law will apply.  It is nevertheless clear that regardless of where the case proceeds, its resolution will require a comparison between the laws of New York and Georgia for the purpose of determining whether a conflict exists.  It will then

27

require the application of New York choice-of-law principles to resolve any conflict.  Either court can perform these tasks. Accordingly, the forum's familiarity with the governing law is a neutral factor in the Court's analysis.

3.

Fairbanks asserts that the convenience of the parties favors transferring this case to Georgia, especially when considered in light of the parties' relative means.

The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant.  Royal Ins. Co., 2002 WL 31385815, at *6.  On the other hand, "[t]he parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party."  AIG, 675 F. Supp. 2d at 370 (citation omitted); see also Federman Assocs. v. Paradigm Med. Indus., Inc., No. 96 Civ. 8545, 1997 WL 811539, at *3 (S.D.N.Y. Apr. 8, 1997).  "In determining whether the relative means of the parties weighs in favor of transfer, a court should determine whether a party's financial situation would meaningfully impede its ability to litigate th[e] case in either forum."  AIG, 675 F. Supp. 2d at 371 (citation and internal quotation marks omitted).

In this case, Fairbanks has its current principal place of business in Rome, Georgia, which is its only location. (Butcher Decl. ¶¶ 9-10.)  Liberty Mutual is headquartered in Massachusetts, and has a corporate office in New York and several branch offices in Georgia.  (See Russey Aff., Ex. E at 1, Ex. F. at 1, Ex. G at 1.)  Although it is plain that litigating this case in the Northern District of Georgia would increase convenience for Fairbanks, a transfer to Georgia would also decrease convenience for any Liberty Mutual officers who have to travel from the Liberty Mutual headquarters in Massachusetts.  Nevertheless, given the Georgia location of Fairbanks's headquarters and the fact that Liberty Mutual's headquarters is not located in this District, a transfer would not merely shift convenience—it would likely enhance convenience for Fairbanks without drastically reducing convenience for Liberty Mutual.  Accordingly, this factor weighs slightly in favor of transfer.

Fairbanks asserts that the significance of this factor is enhanced by the fact that it has modest financial means, while Liberty Mutual is a substantial company.  Fairbanks asserts that "[i]t would require multiple travel days or expensive airfare for Fairbanks employees to travel to [the Southern District of New York] for trial or other proceedings."  (Butcher Decl. ¶ 17.)  However, Fairbanks does not explain how this would

impose a meaningful financial hardship on the company, and Fairbanks's assertion that this litigation will require few if any witnesses reduces the likelihood that employee travel expenses will impose a significant financial burden. Accordingly, the disparity in the relative means of the parties does not meaningfully favor transfer. See AIG, 675 F. Supp. at 372.

4.

As a final matter, the plaintiff's choice of forum is a factor entitled to "great weight." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006). This is especially true when "there is a material connection between the forum state and the underlying events." Accantia Grp., 908 F. Supp. 2d at 441-42 (citations and internal quotation marks omitted); see also EasyWeb Innovations, LLC v. Facebook, Inc., 888 F. Supp. 2d 342, 348-49, 350 (E.D.N.Y. 2012). Given the material connections between New York and the facts giving rise to this litigation—including Fairbanks's principal place of business when the policies were issued and the primary location of the insured risk—this factor weighs strongly against transfer.

C.

When weighed together, the balance-of-convenience factors do not support setting aside the deference due to Liberty Mutual's choice of forum under the first-filed rule.  Although the benefit in convenience to Fairbanks from transferring this case to Georgia may slightly outweigh the loss in convenience to Liberty Mutual, Fairbanks has not demonstrated that any of the other factors favor transfer.  To the contrary, the timing of this action and the material connections between this action and this forum indicate that this is a legitimate declaratory judgment action.  Liberty Mutual's choice of this forum is therefore entitled to great weight, and Fairbanks has not made the showing necessary for overcoming the strong presumption in favor of this forum.  For these reasons, Fairbanks's motion to transfer this action to the Northern District of Georgia pursuant to § 1404(a) must be denied.

III.

At the time Fairbanks's motion to transfer was filed, there was a pending motion in the Georgia Action to remand that case to state court.  Thus, as an alternative to its motion to transfer this action to the Northern District of Georgia, Fairbanks moved this Court to stay or dismiss this action pursuant to the abstention principles articulated in Wilton v.

31

Seven Falls Co., 515 U.S. 277 (1995) and Colorado River Water
Conservation District v. United States, 424 U.S. 800 (1976) in
the event that the Georgia Action was remanded to state court.
Because Judge Jones denied Fairbanks's remand motion,
Fairbanks's motion to stay or dismiss this action pursuant to
the abstention doctrines articulated in Wilton and Colorado
River must be denied as moot.


                            CONCLUSION

     The Court has considered all of the arguments of the
parties.  To the extent not specifically addressed above, all
other arguments raised by the parties are either moot or without
merit.  For the reasons explained above, Fairbanks's motion to
transfer this case to the Northern District of Georgia is
**denied**, and Fairbanks's motion to stay or dismiss this case is
**denied as moot**.  The Clerk is directed to **close Docket No. 21.**


**SO ORDERED.**

**Dated:    New York, New York**
**         May 5, 2014**            _____/s/_____
                                          **John G. Koeltl**
                                 **United States District Judge**


                               32