```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

LIBERTY MUTUAL INSURANCE COMPANY,
              Plaintiff,              13-cv-3755 (JGK)
     v.                               15-cv-1141 (JGK)

THE FAIRBANKS COMPANY,                MEMORANDUM OPINION AND
              Defendant/Plaintiff,    ORDER
     v.

NATIONAL UNION FIRE INSURANCE OF
PITTSBURGH, PA; LIBERTY MUTUAL
INSURANCE COMPANY; FIREMAN'S FUND
INSURANCE COMPANY; AXA ROYALE BELGE;
THE HARTFORD INSURANCE COMPANY;
TRAVELER'S CASUALTY & SURETY
COMPANY,
              Defendants.
────────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

On May 27, 2016, the Fairbanks Company ("Fairbanks") moved for reconsideration of the Opinion and Order entered by this Court on March 21, 2016, granting the motion by Liberty Mutual Insurance Company ("Liberty") for summary judgment on the issue of the allocation method that should apply to Liberty's insurance policies ("the Summary Judgment Decision"). Liberty opposed the motion for reconsideration in part and moved for summary judgment seeking declaratory relief with respect to the non-cumulation clauses in certain Liberty policies.[1]

---

[1] The parties' familiarity with the facts and arguments in the underlying March 21, 2016 opinion and briefing are presumed. See Liberty Mut. Ins. Co. v. Fairbanks Co., Nos. 13-cv-3755, 15-cv-1141 (JGK), 2016 WL 1169511 (S.D.N.Y. Mar. 21, 2016).

1

**I.**

"The decision to grant or deny a motion for reconsideration rests within the sound discretion of the district court." Vincent v. The Money Store, No. 03-cv-2876(JGK), 2011 WL 5977812, at *1 (S.D.N.Y. Nov. 29, 2011) (internal quotation marks omitted). "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly...." Anwar v. Fairfield Greenwich Ltd., 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011) (internal quotation marks omitted). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted); Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n, No. 12-cv-7581(JGK), 2015 WL 6454844, at *2 (S.D.N.Y. Oct. 26, 2015), aff'd sub nom. Millennium Partners, L.P. v. Wells Fargo Bank, N.A., No. 15-3833-cv, 2016 WL 3620972, at *1 (2d Cir. July 6, 2016).

There is no dispute that Liberty insured Fairbanks for successive annual periods from January 1, 1974 to January 1, 1982 under comprehensive general liability policies (the "primary policies") and umbrella excess liability policies (the "umbrella policies"). Liberty's 56.1 Stmt. ¶ 1; Fairbanks' 56.1

Resp. ¶ 1. In the March 21, 2016 Summary Judgment Decision, this Court concluded that Liberty's primary and umbrella policies, which are governed by New York law and the latter of which include a non-cumulation clause, were subject to pro rata allocation such that Liberty was only liable to indemnify Fairbanks for the years Liberty was "on the risk." See Liberty Mut. Ins. Co. v. Fairbanks Co., Nos. 13-cv-3755, 15-cv-1141 (JGK), 2016 WL 1169511, at *2, *8 (S.D.N.Y. Mar. 21, 2016).

On May 3, 2016, the New York Court of Appeals issued an opinion in In re Viking Pump, Inc., 27 N.Y.3d 244 (2016), answering a question certified to it by the Delaware Supreme Court: whether "all sums" or "pro rata" allocation applies where excess insurance policies, also known as umbrella policies, contain a non-cumulation clause. Id. at 250. The New York Court of Appeals decided that "all sums" allocation should apply to policies with non-cumulation clauses because the non-cumulation clauses "plainly contemplate that multiple successive insurance policies can indemnify the insured for the same loss or occurrence" and non-cumulation was inconsistent with a pro rata approach. Id. at 261. Fairbanks moved for reconsideration of the Summary Judgment Decision, arguing that under Viking Pump, all sums allocation, not pro rata allocation, should apply to the Liberty umbrella policies.

The parties are in agreement that all sums allocation should apply to the Liberty umbrella policies. See Liberty Br. in Opp. at 1; Fairbanks Reply at 1. The parties recognize that the decision of the New York Court of Appeals in Viking Pump disposes of the allocation issue and controls the umbrella policies in this case.

Liberty opposed Fairbanks' motion for reconsideration in part because Liberty believed that Fairbanks was requesting reconsideration of the portion of the Summary Judgment Decision which concluded that the primary policies are subject to pro rata allocation. However, in its reply, Fairbanks clarified that its motion for reconsideration was only directed at the holding with respect to the Liberty umbrella policies. Liberty did not oppose reconsideration on the issue of the proper allocation method in the umbrella policies which contain a non-cumulation clause. Therefore, the only issue that is subject to reconsideration is the allocation method that should apply to the Liberty umbrella policies. An intervening change in the law requires reconsideration of the Summary Judgment Decision. Accordingly, Fairbanks' motion for reconsideration is granted. Based on the New York Court of Appeals' decision in Viking Pump, the all sums allocation method should apply to the umbrella

4

policies.[2] As the parties recognize, the Summary Judgment Decision of March 21, 2016, is controlling in all other respects.

## II.

With respect to Liberty's motion for summary judgment concerning the non-cumulation clauses, Liberty argues that the non-cumulation clauses should limit the ability of Fairbanks to recover under multiple Liberty umbrella policies. Liberty contends that the non-cumulation clause operates so that as Liberty makes payments for the asbestos claims under the first-year policy, the 1974 policy, those payments would also reduce the amount available under the subsequent Liberty umbrella policies. Liberty argues that the occurrence limit and the aggregate limit on the policy precludes "stacking" or recovery under more than one policy. Liberty seeks a declaration that "the limits afforded to Fairbanks under each of the 1975-1981 Umbrella Policies for the Asbestos Claims must be reduced by the amount of payments that Liberty makes for Asbestos Claims under any previous Umbrella Policy." Liberty Br. in Supp. of Summ. J. at 2-3.

---

[2] An all sums interpretation of the Liberty umbrella policies makes Liberty potentially liable for the periods of time during which Fairbanks may have been uninsured or underinsured, and any years in which Fairbanks had a gap in coverage, such as the years during which Fairbanks was insured by Lumbermens' Mutual Insurance Company, an insurer which became insolvent in May 2013. Liberty Mutual, 2016 WL 1169511, at *2.

Under New York law, insurance policies are interpreted according to general rules of contract interpretation. Olin Corp. v. Am. Home Assurance Co., 704 F.3d 89, 98 (2d Cir. 2012). Courts must "give effect to the intent of the parties as expressed in the clear language of their contract." Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co., 702 F.3d 118, 122 (2d Cir.2012). Accordingly, summary judgment on the meaning of an insurance policy is appropriate when the terms of a policy are unambiguous. Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992).

The determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 465–66 (2d Cir. 2010) (collecting cases); accord In re Prudential Lines Inc., 158 F.3d at 77. Policy terms are unambiguous where they provide "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." Olin, 704 F.3d at 99 (internal citation and quotation marks omitted). Where, on the other hand, contract terms are "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages

6

and terminology as generally understood in the particular trade or business," the contract terms are ambiguous and summary judgment is inappropriate. Id. (internal citation and quotation marks omitted). "[W]here consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity." Law Debenture Tr., 595 F.3d at 467 (quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 300 (2d Cir.1996)); see also Liberty Mutual, 2016 WL 1169511, at *4-*5; Hudson-Port Ewen Assocs., L.P. v. Kuo, 578 N.E.2d 435, 435 (N.Y. 1991).

>In this case, the non-cumulation clause provides
>
>>If the same occurrence gives rise to personal injury . . . which occurs . . . partly within any annual period of this policy, the each occurrence limit and the applicable aggregate limit or limits of this policy shall be reduced by the amount of each payment made by the company with respect to such occurrence, either under a previous policy or policies of which this is a replacement, or under this policy with respect to previous annual periods thereof.

Liberty 56.1 Stmt. ¶ 12; Weber Aff. Ex. 2 at LM_000212. Each umbrella policy has a $10 million occurrence limit and a $10 million aggregate limit. Liberty 56.1 Stmt. ¶¶ 8-9; Weber Aff. Ex. 2 at LM_000207, LM_000212 ("The limit of liability stated in the declarations as applicable to 'each occurrence' is the limit of the company's liability for all damages . . . because of all personal injury . . . sustained by one or more persons . . . as a result of any one occurrence."). "Occurrence" is defined as

7

"injurious exposure to conditions, which results in personal injury, property damage or advertising injury or damage neither expected nor intended from the standpoint of the insured." Weber Aff. Ex. 2 at LM_000213.

In Viking Pump, the New York Court of Appeals explained that non-cumulation clauses "prevent stacking, the situation in which an insured who has suffered a long term or continuous loss which has triggered coverage across more than one policy period . . . wishes to add together the maximum limits of all consecutive policies that have been in place during the period of the loss." Viking Pump, 27 N.Y.3d at 259 (internal quotation marks and citations omitted). Liberty argues that the plain terms of the non-cumulation clause require that the policy limit of all subsequent policies be reduced by the amount of all prior payments for claims.

Summary judgment on the meaning of the non-cumulation clause is not appropriate in this case at this time because there is substantial ambiguity as to how the non-cumulation provisions in the umbrella policies operate. According to Fairbanks, the occurrence limit applies to each individual claim, not to the overall liability for asbestos injuries. The recovery for each claim is capped by the occurrence limit and the aggregate limit in a policy and policies cannot be "stacked" to increase those limits. The subsequent policies, however, are

8

not exhausted for other claims. Liberty contends that once the policy limit is reached for one claim, irrespective of whether there are other claims, the policy limit is exhausted for the particular policy triggered and all subsequent policies.

With respect to the number of occurrences at issue in the underlying asbestos actions, Liberty remarkably does not take any position on the issue of whether the asbestos claims are all one occurrence or constitute multiple occurrences. Liberty Reply at 3 n.4. Liberty argues that regardless of how many occurrences are at issue, Liberty's indemnity payments reduce the amount that is available for recovery under subsequent policies pursuant to the each occurrence limit and the aggregate limit. The plain language of the non-cumulation clause explicitly refers to "the same occurrence," making it necessary to determine how many occurrences are at issue.  See Weber Aff. Ex. 2 at LM_000212 ("For the purpose of determining the limits of the company's liability, . . . all personal injury . . . arising out of continuous or repeated exposure to substantially the same general conditions . . . shall be considered as the result of one and the same occurrence.").

In Viking Pump, the New York Court of Appeals noted that in prior cases, the Court of Appeals had enforced non-cumulation clauses to limit the insured's recovery under subsequent policies. In re Viking Pump, Inc., 27 N.Y.3d at 259 (citing

9

Nesmith v. Allstate Ins. Co., 25 N.E.3d 924 (N.Y. 2014) and Hiraldo v. Allstate Ins. Co., 840 N.E.2d 563 (N.Y. 2005)). Liberty relies on this portion of Viking Pump and Court of Appeals precedent to argue that the non-cumulation clauses in the Liberty umbrella policies should be strictly enforced to preclude recovery under subsequent annual policies, regardless of the number of occurrences.

But the cases cited in Viking Pump do not support Liberty's interpretation of the non-cumulation clauses in Liberty's umbrella policies. The non-cumulation clause in Hiraldo limited recovery to damages resulting from one loss, regardless of the number of persons injured or policies involved, to $300,000, and the Court plainly concluded that there was only *one* occurrence at issue—one child claimed to have been injured by exposure to lead over several years. Hiraldo, 840 N.E.2d at 564. In Nesmith, the Court of Appeals held that the non-cumulation clause precluded recovery under multiple insurance policies because the lead exposure causing the loss constituted a single loss even though several people were allegedly injured by exposure to lead in the same apartment. Nesmith, 25 N.E.3d at 926. These cases show that ascertaining the number of occurrences or losses is necessary before deciding how a non-cumulation clause operates. Fairbanks points out that the asbestos claims against it have arisen from numerous occurrences. The lawsuits have been filed

in numerous jurisdictions and alleged different dates and places of exposure. Fairbanks reasonably argues that the non-cumulation clause applies only to "the same occurrence" and that there has been no discovery on the number of different occurrences for which Fairbanks has been sued. At the argument of the current motions, Liberty argued that all of the asbestos claims have arisen from "the same occurrence" but Fairbanks vigorously disputes that contention, and the Court could not decide as a matter of law that all of the claims arise from the "same occurrence."

To the extent Liberty relies on Endicott Johnson Corp. v. Liberty Mutual Insurance Co., 928 F. Supp. 176 (N.D.N.Y. 1996), for the proposition that the limits for future payments for occurrences are reduced by payments for a different occurrence, Liberty overstates the Court's analysis. Id. at 180-81. In Endicott, the plaintiff sought recovery for cleanup costs at landfills at which it had allegedly dumped hazardous waste. The plaintiff argued that these were multiple "occurrences" each of which was subject to a different policy limit, while Liberty argued there was only one occurrence. The Court determined that there were actually two occurrences and interpreted the non-cumulation clause to prevent more than the per-occurrence limit for the same occurrence. Id. at 182. There was no reasoning in the decision for how the clause affected the aggregate limits in

11

subsequent policies, although the Court eventually found without explanation that the plaintiff was limited to the recovery limit for one occurrence. Id. at 185; see also Plastics Eng'g Co. v. Liberty Mut. Ins. Co., 466 F. Supp. 2d 1071, 1081-83 (E.D. Wis. 2006), aff'd 316 F. App'x 501 (7th Cir. 2009) (concluding that asbestos claims constituted separate occurrences and interpreting a Liberty non-cumulation clause to limit Liberty's liability to the policy occurrence limit for *each* occurrence).

The other cases that Liberty cites in support of its interpretation of the non-cumulation clause are also distinguishable. In Liberty Mutual Insurance Co. v. Treesdale, Inc., 418 F.3d 330 (3d Cir. 2005), before concluding that the non-cumulation clause limited recovery under subsequent policy periods, the Court of Appeals for the Third Circuit concluded that exposure to asbestos containing products resulted from a *single* occurrence. Id. at 335. But in its papers Liberty did not argue that the asbestos claims in this case resulted from a single occurrence and indeed claimed to take no position on the number of occurrences. Liberty argues that the non-cumulation clause bars recovery under subsequent policies even if there is more than one occurrence. Liberty has not cited any case where a court interpreted a non-cumulation clause without *first* deciding whether there was a single occurrence or multiple occurrences.

12

As Fairbanks points out, the parties have not begun to take discovery on the issue of the number of occurrences and therefore, summary judgment on an issue that depends on the number of occurrences is not appropriate. Accordingly, Liberty's motion for summary judgment is denied without prejudice to renewal. Liberty has not argued that all the asbestos claims are a single occurrence, and while at the argument of the current motion, Liberty argued that all the claims constituted the "same occurrence," the Court could not make such a finding on this motion. All the cases the parties cite show that the occurrence issue is a threshold question and Liberty's motion attempts to leapfrog over it. Liberty, not Fairbanks, ignores the plain language of the non-cumulation clause and the fact that the application of the non-cumulation clause is limited to "the same occurrence."

Moreover, the issues in Liberty's motion extend beyond the scope of the Initial Issues on which the parties sought to move for summary judgment in this case. In addition to having to determine the number of occurrences, the summary judgment motion potentially implicates the order in which policies should be triggered, the effect of Liberty's practice of allocating indemnity payments across policies, and speculation over what will occur when Liberty has paid out the limit on an umbrella policy, which has not yet occurred. None of these matters were

13

part of the Initial Issues on which the parties agreed to move for summary judgment.

The Liberty non-cumulation clauses must be enforced under Viking Pump, even where policies are subject to an all sums allocation, see 27 N.Y.3d at 259, but the preconditions for their enforcement have not been established in the record at this time. It is unnecessary to reach Fairbanks' other arguments in opposition to Liberty's motion.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the parties' arguments are either moot or without merit. The Clerk of Court is directed to close all pending motions.

The parties should file a joint letter informing the Court of the results of their September mediation before Justice Freedman.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **August 5, 2016**

_____/s/_____

**John G. Koeltl
United States District Judge**